Roland IMPERIAL, M.D.

v.

SUBURBAN HOSPITAL ASSOCIATION, INC., et al.

Civ. No. L–90–3237.

United States District Court, D. Maryland.

Oct. 12, 1993.

Barry J. Rosenthal, Rockville, MD, for plaintiff.

S. Allan Adelman, Rockville, MD, for defendants.

## MEMORANDUM

LEGG, District Judge.

Pending before the Court is a Motion for Summary Judgment filed by the defendants Suburban Hospital Association *et al.* ("Suburban") in this civil action filed under 15 U.S.C. §§ 1, 2 and 28 U.S.C. §§ 1331, 1337, and 1343. For the reasons stated herein, the Court will GRANT the defendants' Motion for Summary Judgment by separate order.

### I. FACTS

The plaintiff, Roland Imperial, M.D., began practicing medicine in 1962 and was licensed to practice medicine in the State of Maryland in 1969. The defendants in this action are Suburban Hospital, Inc., the Medical Staff of Suburban Hospital, John S. Saia, M.D., Daniel Powers, M.D., John Lord, M.D., John S. Eng, M.D., Joel Schulman, M.D., and Charles Tennen, M.D.

Physicians are appointed to the Medical Staff at Suburban for two-year periods and must apply for reappointment every two years. Dr. Imperial was first granted privileges at Suburban in February of 1977 and routinely received reappointment from 1977 through 1987. In April 1983, Dr. Imperial was placed "under review" by the Department of Medicine because he had received many negative incident reports.[1] On October 28, 1987, Dr. Imperial's application for reappointment was denied.

In 1987, Dr. Imperial was a member of the Internal Medicine subsection within the Department of Medicine at Suburban. Both the Chairman of the subsection, Dr. Robert C. Daddario, and defendant Dr. John Saia, Chairman of the Department of Medicine, recommended in Dr. Imperial's Reappointment Profile that he not be reappointed.[2] In a letter dated December 14, 1987, Dr. Imperial was notified that a recommendation had been made. that he not be reappointed because of quality assurance problems. Dr.

Imperial was also informed that his application for reappointment, along with the adverse recommendation of Drs. Saia and Daddario, had been forwarded to the Medical Staff Credentials Committee for consideration.[3]

In another letter dated December 16, 1987, Dr. John Saia notified Dr. Imperial that he had made an adverse recommendation concerning his reappointment and that the matter had been referred to the Credentials Committee.[4] The bases for Dr. Saia's adverse recommendation were: (i) Dr. Imperial's lengthy and garrulous progress notes; (ii) his inappropriate use of antibiotics in many cases; (iii) multiple incident reports from nursing reflecting his unavailability; and (iv) his failure to show improvement in patient care. Dr. Saia included with his letter a chronological listing of 53 incidents in Dr. Imperial's quality assurance file dating back to 1982.[5] The quality assurance summary included charges of inappropriate patient care and behavior filed by several members of the hospital staff. Some of the major problems cited in the report were: (i) Dr. Imperial's unavailability; (ii) inappropriate remarks in patient records; (iii) inefficient use of diagnostic and therapeutic services; and (iv) overuse of drugs.

Dr. Imperial's application for reappointment was initially considered by the Credentials Committee, chaired by defendant Dr. Joel Schulman, at its meeting on December 18, 1987. Action by the Committee was deferred until January 15, 1988, to allow the Committee to review a number of Dr. Imperial's patient charts and Dr. Saia's recommendation.[6] On January 15, the Committee voted 6–0 (with one abstention) to recommend to the Medical Staff Executive Committee that Dr. Imperial not be reappointed. By letter dated January 28, 1988, Dr. Schulman provided Dr. Imperial with copies of the

---

1. *See* Defendants' Exhibit 2.

2. *See* Defendants' Exhibit 2.

3. *See* Defendants' Exhibit 4.

4. *See* Defendants' Exhibit 6.

5. *See* Defendants' Exhibit 6.

6. *See* Defendants' Exhibit 10.

reports of the Credentials Committee and of Dr. Saia.[7]

At its meeting on February 22, 1988, the Medical Staff Executive Committee—after reviewing the quality assurance summary, the patient records in question, Dr. Saia's recommendation, and the Credentials Committee Report—voted unanimously to recommend denial of Dr. Imperial's application for reappointment. By letter dated February 22, 1988, Dr. Powers, the chairman of the Medical Staff Executive Committee, informed Dr. Imperial of the Medical Staff Executive Committee's decision and advised him of his right to request a hearing.[8]

Plaintiff requested a hearing. The hearing began on October 27, 1988, continued on October 31, 1988, and concluded on November 7, 1988. The hearing panelists were defendants Drs. Tennen, Lord, and Eng, who were chosen by Dr. Imperial from a list of physicians. On December 13, 1988, the hearing panel formally recommended denial of Dr. Imperial's application for reappointment.[9] The grounds for the panel's recommendation were Dr. Imperial's: (i) verbose and redundant patient charts; (ii) inability to extrapolate important information; (iii) inappropriate use of antibiotics; (iv) failure to consult specialists; and (v) intolerance of others who disagreed with him. Dr. Imperial received a copy of the hearing panel's report.

After reviewing the hearing panel's report and Dr. Imperial's response, the Medical Executive Committee reconsidered Dr. Imperial's application for reappointment at its February 7, 1989 meeting and voted unanimously to recommend denial of reappointment.[10] The Board of Trustees of Suburban considered the report and recommendations of the Credentials Committee, the Medical Staff Executive Committee, the hearing panel, and the Chairman of the Department of Medicine. At its June 28, 1989 meeting, the Board of Trustees voted unanimously to deny Dr. Imperial's application for reappointment.[11]

As a result of the denial of his privilege to practice medicine in the hospital, Dr. Imperial filed a four-count complaint in this Court on December 13, 1990, alleging (Count I) violation of procedural due process and bad faith peer review; (Count II) violation of the Sherman Anti-Trust Act; (Count III) breach of contract and violation of the Medical Staff by-laws; and (Count IV) tortious interference with contracts and business relations.

On September 9, 1991, Judge Nickerson issued a Memorandum and Order granting the defendants' Motion to Dismiss as to Count I (with prejudice), Count II (without prejudice), and denied the Motion as to Counts III and IV. After the plaintiff amended his complaint, this Court issued a Memorandum and Order dated March 20, 1992, granting the plaintiff's Motion for Reconsideration and vacating that portion of Judge Nickerson's Memorandum and Order which dismissed Count II. Count I remained dismissed, however.

## II. DISCUSSION

### A. Rule 56 Standard

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if the movant can show that there is "no genuine issue as to any material fact" and that the movant is "entitled to judgment as a matter of law." Celotex Corp v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this case, the defendant, as the moving party, bears the initial burden of proof. The Court must determine whether, when viewing the evidence in the light most favorable to the plaintiff, "a fair-minded jury could return a verdict for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If the movant makes the preliminary showing, the

---

7. See Defendants' Exhibit 11.

8. See Defendants' Exhibit 14.

9. See Defendants' Exhibit 39.

10. See Defendants' Exhibit 47.

11. The reasons for its decision were: (i) the unclear nature of plaintiff's medical records; (ii) his inappropriate use of antibiotics; and (iii) his failure to obtain consultations. By letter dated July 10, 1989, Dr. Imperial was advised of the action of the Board of Trustees. See Defendants' Exhibit 48.

burden shifts to the opposing party to delineate, with supporting admissible evidence, an issue of material fact. A mere "scintilla of evidence in support of the plaintiff's position" shall not suffice. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

The Court will analyze first the defendants' federal law immunity and will then consider their state law immunity. After reviewing all evidence proffered in this case, the Court GRANTS the defendants' Motion for Summary Judgment for the reasons stated below.

## B. *Health Care Quality Improvement Act of 1986*

In 1986, Congress passed the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. §§ 11101–11152, as part of a broad-based plan to improve the quality of health care available to Americans. Recognizing that peer review is a vital aspect of every hospital's ethical duty to protect public health, Congress enacted the HCQIA to alleviate the reluctance of physicians to participate in peer review activities for fear of being sued by physicians whose applications were denied. The defendants assert that their actions concerning Dr. Imperial's application met the HCQIA standards and that they are entitled to immunity concerning their decision to deny the plaintiff's application for reappointment. The plaintiff counters that there are material issues of disputed fact such that summary judgement cannot be granted, including whether defendants complied with the notice requirement under 42 U.S.C. § 11112, conducted the peer review in good faith, and made a reasonable effort to obtain the facts of the matter.[12]

To obtain the benefit of the protection of the HCQIA, a professional review action must be taken:

1) in the reasonable belief that the action was in the furtherance of quality health care,

2) after a reasonable effort to obtain the facts of the matter,

3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and

4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C. § 11112(a). A health care entity is deemed to have met the adequate notice and hearing requirement of subsection § 11112(a)(3) if it complies with the requirements set out in 42 U.S.C. § 11112(b).[13] In

---

12. The Act provides specific immunities as follows:

(1) **Limitation on damages for professional review actions**

If a professional review action (as defined in section 11151(9) of this title) of a professional review body meets all the standards specified in section 11112(a) of this title, except as provided in subsection (b) of this section—

(A) the professional review body,

(B) any person acting as a member or staff to the body,

(C) any person under a contract or other formal agreement with the body, and

(D) any person who participates with or assists the body with respect to the action,

shall not be liable in damages under any law of the United States or of any State (or political subdivision thereof) with respect to the action. 42 U.S.C. § 11111(a)(1).

13. (b) **Adequate notice and hearing**

A health care entity is deemed to have met the adequate notice and hearing requirement of subsection (a)(3) of this section with respect to a physician if the following conditions are met (or are waived voluntarily by the physician):

(1) **Notice of proposed action**

The physician has been given notice stating—

(A)(i) that a professional review action has been proposed to be taken against the physician,

(ii) reasons for the proposed action,

(B)(i) that the physician has the right to request a hearing on the proposed action,

(ii) any time limit (of not less than 30 days) within which to request such a hearing, and

(C) a summary of the rights in the hearing under paragraph (3).

(2) **Notice of hearing**

If a hearing is requested on a timely basis under paragraph (1)(B), the physician involved must be given notice stating—

(A) the place, time, and date, of the hearing, which date shall not be less than 30 days after the date of the notice, and

(B) a list of the witnesses (if any) expected to testify at the hearing on behalf of the professional review body.

(3) **Conduct of hearing and notice**

short, if the professional peer review actions meet specified standards, the health care entity and individual physicians taking part in the process are entitled to immunity under the HCQIA.

### C. *Application of the HCQIA to Count II*

The plaintiff's only federal claim against the defendants is an alleged violation of the Sherman Anti–Trust Act.[14] The HCQIA immunizes the defendants from federal antitrust liability, however, if the defendants' professional review action satisfied specified requirements. *See* 42 U.S.C. § 11111(a)(1). As a preliminary matter, the immunities provided in the HCQIA apply to "professional review actions commenced on or after the date of the enactment of this Act [November 14, 1986]." Pub.Law No. 99–660, § 416. Because the defendants' first professional review actions occurred on October 27, 1988, the actions at issue here transpired after the effective date of the HCQIA.

■ If the defendants satisfy their burden of proof, the HCQIA specifically immunizes all eight defendants. The six individual defendants—namely, Drs. Saia, Powers, Lord, Eng, Schulman, and Tennen—are eli-

gible because "any person who participates with or assists the body with respect to the [professional review] action" is shielded from federal antitrust liability. 42 U.S.C. § 11111(a)(1)(D). The two remaining defendants, Suburban Hospital Association and Medical Staff of Suburban Hospital, are also entitled to immunity, since they fall within the category of a "professional review body." 42 U.S.C. § 11111(a)(1)(A).

### 1. *HCQIA Procedural Requirements* [15]

Procedurally, Section 11112(a)(3) requires that professional review actions comply with the due process requirements of "adequate notice and hearing" in order to merit immunity. The notice procedures are described in Section 11112(b)(1)–(2). The plaintiff alleges that the defendants failed to fulfill these notice requirements. The Court finds, however, that the plaintiff has failed to proffer sufficient evidence to withstand the defendants' summary judgment motion.

■ The Court concludes that a hearing was conducted in compliance with the procedures outlined in Section 11112(b)(3)(A)–(D). First, as Section 11112(b)(3)(A) requires, the hearing panel was comprised of individuals

If a hearing is requested on a timely basis under paragraph (1)(B)—
(A) subject to subparagraph (B), the hearing shall be held (as determined by the health care entity)—
(i) before an arbitrator mutually acceptable to the physician and the health care entity,
(ii) before a hearing officer who is appointed by the entity and who is not in direct economic competition with the physician involved, or
(iii) before a panel of individuals who are appointed by the entity and are not in direct economic competition with the physician involved;
(B) the right to the hearing may be forfeited if the physician fails, without good cause, to appear;
(C) in the hearing the physical involved has the right—
(i) to representation by an attorney or other person of the physician's choice,
(ii) to have a record made of the proceedings, copies of which may be obtained by the physician upon payment of any reasonable charges associated with the preparation thereof,
(iii) to call, examine, and cross-examine witnesses,
(iv) to present evidence determined to be relevant by the hearing officer, regardless of its admissibility in a court of law, and

(v) to submit a written statement at the close of the hearing; and
(D) upon completion of the hearing, the physician involved has the right—
(i) to receive the written recommendation of the arbitrator, officer, or panel, including a statement of the basis for recommendations, and
(ii) to receive a written decision of the health care entity, including a statement of the basis for the decision.
42 U.S.C. § 11112(b).

**14.** The plaintiff's other federal claim, violation of procedural due process, was previously dismissed in a Memorandum by Judge Nickerson dated September 9, 1991.

**15.** As stated earlier, in order to obtain the benefit of the protection of the HCQIA, a professional review action must be taken: (i) for the purpose of furthering quality health care; (ii) after a reasonable effort to obtain the facts; (iii) after the physician involved has been give adequate notice and hearing procedures; and (iv) in the reasonable belief that the action was warranted by the facts.

with specialties different than Dr. Imperial and not in direct competition with Dr. Imperial.[16] Second, the defendants complied with all the provisions of HCQIA relating to the right of a physician to (i) be represented by an attorney or other person of the physician's choice during the hearing; (ii) have a record made of the proceeding and to obtain copies of that record upon payment of any reasonable changes; (iii) call, examine, and cross-examine witnesses; (iv) present evidence determined to be relevant by the Hearing Officer, regardless of its admissibility in a court of law; and (v) submit a written statement at the close of the hearing. *See* 42 U.S.C. § 11112(b)(3)(C)(i)–(v).

■ Even though the defendant complied with the provisions of 42 U.S.C. § 11111, the plaintiff asserts that the defendants' procedures violated due process requirements for several reasons. First, the hearing involved hearsay testimony. Under 42 U.S.C. § 11112, however, there is no prohibition against the use of hearsay in the peer review process. *See* 42 U.S.C. § 11112(b)(3)(C)(iv). Further, the plaintiff has not shown that he complained about the admission of hearsay during the hearing.

■ Second, the plaintiff alleges in his affidavit that he was not given an opportunity to cross-examine the witnesses who testified at the hearing.[17] Other evidence refutes this declaration. During the meeting before the Board of Trustees on June 28, 1989, plaintiff's attorney, Roy Mason, "acknowledged that Dr. Imperial had not been prevented from presenting witnesses or evidence or from challenging any witnesses presented by Suburban Hospital at the hearing."[18]

■ Third, the plaintiff alleges the he was never given the "opportunity to review all the documents upon which the decision for [his] non-appointment was made."[19] The defendants, however, present evidence which demonstrates that Dr. Imperial was sent the quality assurance summary, Dr. Saia's recommendation, both Committees' reports, and the Board of Trustees' report.[20] Furthermore, Dr. Imperial signed a statement indicating that he received the medical files he requested for the hearing.[21]

Fourth, Dr. Imperial claims in his affidavit that Dr. Kalis, a pharmacist, should not have been on the peer review panel.[22] Dr. Kalis, however, was a witness and not a member of the peer review panel. As stated in the peer review panel report, the only members of the panel were Drs. Eng, Lord, and Tennen.[23] The plaintiff was aware of this because he reviewed all of the potential panel members and selected two of them.

---

16. Dr. Lord's specialty is neurosurgery and Dr. Tennen's specialty is oral surgery, *see* Defendants' Exhibit 26, and Dr. Eng's specialty is plastic surgery. *See* Defendants' Exhibit 15.

It should be noted that the hospital went even further than the law requires by giving Dr. Imperial the opportunity to select two panel members from a list of five physicians. The plaintiff is correct in his assertion that two of the physicians on the list were two physicians he objected to being on the panel. Nonetheless, Dr. Imperial was still given a list of at least three physicians from which to choose two panel members.

17. *See* Plaintiff's Exhibit 12 ¶ 12.

18. Defendants' Exhibit 47.

19. Plaintiff's Exhibit 12 ¶ 11.

20. In a letter from Dr. Saia to Dr. Imperial dated December 16, 1987, Dr. Saia enclosed a copy of his recommendation and a copy of the quality assurance summary. *See* Defendants' Exhibit 6. In a letter dated January 28, 1988, Dr. Schulman, chairman of the Credentials Committee, sent a copy of the Committee's report to Dr. Imperial. *See* Defendants' Exhibit 11. In a letter dated February 22, 1988, Dr. Powers, chairman of the Executive Committee, sent Dr. Imperial a copy of the committee's report. *See* Defendants' Exhibit 14. The plaintiff's exhibits include transcripts of the hearings, and thus the Court concludes that he received a copy of the hearing. In a letter dated December 15, 1988 from Joan Finnerty, President of Suburban Hospital, to Dr. Imperial, she enclosed a copy of the report of the hearing panel. *See* Defendants' Exhibit 39. In a letter dated July 10, 1989, Joan Finnerty, President of Suburban Hospital, informed Dr. Imperial of the Board of Trustee's decision. *See* Defendants' Exhibit 48.

21. On May 13, 1988, Dr. Imperial signed a statement acknowledging receipt of the medical records in question. *See* Defendants' Exhibit 22.

22. *See* Plaintiff's Exhibit 12 at ¶ 16.

23. *See* Defendants' Exhibit 39.

■ Finally, the plaintiff's claim that the charges submitted to him were nebulous and ambiguous is untenable.[24] The plaintiff received a detailed statement of charges which identified specific medical records and issues to be presented to the Hearing Panel.[25] Furthermore, in response to a request from Dr. Imperial's counsel for additional specificity, an explicit eight-page memorandum setting forth the specific allegations with regard to each chart to be presented to the Hearing Panel was prepared by Dr. Frederick Caldwell, Senior Vice President for Medical Affairs.[26]

■ The plaintiff also asserts two arguments addressing the basic fairness of the peer review actions. First, the plaintiff asserts that the challenged action was unfair because the Credentials Committee and the Medical Executive Committee merely rubberstamped Dr. Saia's initial recommendation.[27] Section 11112(a)(2) requires the defendants to demonstrate that they made a "reasonable effort to obtain the facts of the matter." The Court disagrees with the plaintiff's assertion. The Credentials Committee took a one month recess to review the quality assurance summary, the patient records in question, and Dr. Saia's recommendation.[28] Furthermore, the Medical Executive Committee held a hearing in order to investigate the matter before making a recommendation. In both of its reports, the Committee states that it reviewed the quality assurance summary and the specific charts involved in the charges.[29] The plaintiff adduces no evidence in support of his contention that the Credentials Committee and Executive Committee did not independently investigate his charges.

■ Further, the plaintiff claims that the hearing was unfair because his records were not reviewed by an *ad hoc* committee.[30] Plaintiff asserts that he was entitled to an *ad hoc* committee because the first case that addressed peer review, *Austin v. McNamara*, 731 F.Supp. 934 (C.D.Cal.1990), *aff'd*, 979 F.2d 728 (9th Cir.1992), involved an *ad hoc* committee that reviewed the work of the physician in question. There is no requirement in the HCQIA, however, that a physician be reviewed by an independent committee. The fact that Suburban Hospital did not create an *ad hoc* committee does not require the Court to find that the Hospital failed to make a reasonable effort to obtain the facts. Based on the aforementioned evidence regarding the defendants' compliance with the HCQIA procedures, the Court concludes that the review process concerning Dr. Imperial was fair and reasonable.

### 2. HCQIA Substantive Requirements

In order to satisfy the due process requirements of 42 U.S.C.A. § 11112(a)(1), the defendants must also demonstrate that their professional review actions were undertaken "in the reasonable belief that the action was in the furtherance of quality health care." The plaintiff asserts in his affidavit that the "actions taken against him were made in bad faith and were not taken for the purpose of improving the quality of health care within the hospital."[31]

■ The Court finds that the eight defendants complied with § 11112(a) and reasonably believed that the plaintiff's handling of several cases fell below the acceptable standard of care at Suburban Hospital.

**24.** *See* Plaintiff's Exhibit 12 at ¶ 5.

**25.** The report described problems such as Dr. Imperial's: (i) inappropriately lengthy history physical exams; (ii) improper use of antibiotics; (iii) inappropriate blood sugar management; (iv) unavailability; (v) inappropriate documentation in progress notes; (vi) missed diagnoses; and (vii) inadequate nutritional support.

Dr. Imperial received a copy of Joel Schulman's report to the hearing panel. *See* Defendants' Exhibit 17.

**26.** Dr. Imperial received a copy of Dr. Caldwell's report. *See* Defendants' Exhibit 28.

**27.** *See* Plaintiff's Exhibit 12 at ¶ 14.

**28.** *See* Defendants' Exhibit 10.

**29.** *See* Defendants' Exhibits 10 and 13.

**30.** An *ad hoc* committee is a committee of independent physicians who review the patient records in question. The adjective "ad hoc" is defined as "for this special purpose." Black's Law Dictionary 38 (5th ed. 1979).

**31.** Plaintiff's Exhibit 12 at ¶ 7.

Each defendant reviewed Dr. Imperial's quality assurance summary file, which listed 53 negative quality assurance items. The items documented Dr. Imperial's: (i) unavailability; (ii) inappropriate remarks in patient records; (iii) inefficient use of diagnostic and therapeutic services; (iv) overuse of drugs; (v) lengthy patient records; and (vi) lack of attendance at Internal Medicine Conferences and Grand Rounds.[32]

Defendant Dr. Saia, Chairman of Medicine, reviewed Dr. Imperial's quality assurance file and monitored his patient care for two years before recommending denial.[33] Dr. Saia listed eight examples of inappropriate and inadequate patient care to support his recommendation.[34]

The Credentials Committee, chaired by defendant Dr. Schulman, also reviewed Dr. Imperial's quality assurance file, patient records, and Dr. Saia's recommendation. After an in-depth review of all the information available to it, the Committee voted unanimously to deny Dr. Imperial's reappointment because of his "lack of focus, lack of understanding and [his] difficulty with interpersonal relationships."[35] In Dr. Schulman's April 18, 1988 report to the hearing panel, he documented specific problems in Dr. Imperial's patient charts.[36]

Before denying the plaintiff's reappointment, the Executive Committee, chaired by defendant Dr. Powers, reviewed the findings of the Credentials Committee, the charges made against Dr. Imperial by his department chairman, and the pertinent records.[37] The Executive Committee unanimously decided to sustain the charges against Dr. Imperial.[38]

Hearing Panelist defendants Drs. Eng, Tennen, and Lord spent individually in excess of 20 hours reviewing Dr. Imperial's medical records and personal credentials file, and sat for a total of more than 10 hours in a peer review hearing before making their decision to deny reappointment.[39] The panelists wrote a three-page summary explaining their decision.[40]

Defendant Board of Trustees questioned plaintiff's attorney, Roy Mason, and reviewed Dr. Imperial's quality assurance report, patient records, and Committee reports before making their final recommendation.[41] The Board based its recommendation on Dr. Imperial's: (i) lengthy reports; (ii) inappropriate use of antibiotics; and (iii) failure to obtain consultations. Thus, all of the defendants provided ample evidence to demonstrate that their actions were taken in the reasonable belief that they were furthering quality health care.

32. *See* Defendants' Exhibit 6.

33. *See* Defendants' Exhibit 8.

34. Dr. Saia's eight examples of inappropriate and adequate care were: (i) lengthy and garrulous progress notes; (ii) inappropriate language in progress notes; (iii) inappropriate use of antibiotics; (iv) lengthy discharge summaries; (v) multiple incidents reports from nursing reflecting unavailability; (vi) inappropriate replies to quality assurance issues; (vii) failure to attend department meetings; and (viii) failure to learn or show improvement in patient care. *See* Defendants' Exhibit 16.

35. Defendants' Exhibit 10.

36. These problems included: (i) inappropriate lengthy history, physical exam, and discharge summaries; (ii) inappropriate intensity of service for severity of illness; (iii) overuse of antibiotics; (iv) inappropriate documentation in progress notes; (v) unavailability; (vi) missed diagnoses; (vii) inadequate nutritional support; and (viii)

inappropriate drug utilization. *See* Defendants' Exhibit 16.

37. *See* Defendants' Exhibit 13.

38. The Executive Committee found that Dr. Imperial was culpable of: (i) inappropriate use of antibiotics; (ii) difficulty in coordinating care of the patients with the nursing staff; (iii) failure to attend departmental quality assurance meetings; and (iv) lengthy progress notes and discharge summaries.

39. *See* Defendants' Exhibit 39.

40. Their decision was based on Dr. Imperial's: (i) failure to help professional readers understand and focus upon the problem at hand; (ii) inability to extrapolate information from data; (iii) inappropriate use of antibiotics; (iv) failure to consult specialists; (v) intolerance of others who disagreed with him; and (vi) inappropriate behavior to the medical staff.

41. *See* Defendants' Exhibit 47.

Nevertheless, the plaintiff asserts that the defendants' actions were not aimed at the furtherance of quality health care.[42] He alleges that the conclusions of the peer review panel were not fair and impartial because the panelists were more concerned about his attitude than his abilities.[43] In support of his contention, the plaintiff provides one-page excerpts from the hearing in which the panelists and Dr. Imperial seem to be arguing. The possibility that the panelists did not approve of Dr. Imperial's attitude, however, does not require the Court to find that they evaluated his medical abilities unfairly.

Plaintiff also alleges that the recommendations of Dr. Saia, both Committees, and the Board of Trustees were based on an inaccurate review of his patient records. He provides affidavits from Dr. Neil Crane, an internist in Maryland, and Dr. Sidney Steinberg, a vascular surgeon in Kentucky, stating that some of his medical records were accurate and that his medical reporting techniques were understandable.[44] Yet these affidavits do not begin to negate all of the evidence upon which defendants based their recommendations. The affidavits do not address the plaintiff's (i) unavailability; (ii) inappropriate behavior; (iii) misdiagnoses; (iv) nutritional support; (v) failure to attend departmental meetings; (vi) failure to attend Grand Rounds; and (vii) failure to consult specialists. Furthermore, Dr. Crane only reviewed nine of the 24 patient records in question, and Dr. Steinberg did not mention specifically why Dr. Imperial's behavior was appropriate. The plaintiff's evidence does not create a genuine issue of material fact concerning whether the defendants' recommendations were accurate.

Finally, in order to merit immunity, the professional review action "must be taken ... in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the [due process requirements]." 42 U.S.C. § 11112(a)(4). Having already concluded that the defendants' professional review actions satisfy the requirements of due process and involved reasonable efforts in gathering facts, the Court finds the review actions were reasonably warranted based on the facts available. The defendants believed that Dr. Imperial's standard of care was inappropriate, and they therefore denied his privileges to practice at Suburban Hospital.[45]

Given this plethora of evidence regarding Dr. Imperial's substandard patient care, the Court concludes that any objective panel would have denied his application for renewal of privileges to practice at Suburban Hospital. The plaintiff has failed to present sufficient evidence to the contrary. Accordingly, the Court grants the defendants' summary judgment motion.

Because the defendants are entitled to immunity under 42 U.S.C. § 11112, the Court need not consider the state causes of action (Counts III and IV). The statute specifies that individuals entitled to immunity are not liable in damages "under any law of the United States or of *any State* ... with respect to the [professional review] action." 42 U.S.C. § 11111(a)(1) (emphasis added). Nevertheless, the Court will, ruling alternatively, consider the state causes of action.

D. *Immunity Under State Claims: Counts III and IV*

The plaintiff asserts two claims under state law: (i) breach of contract and violation of the Medical Staff by-laws and (ii) tortious interference with contracts and business relations. The Court concludes that the defen-

---

42. *See* Plaintiff's Exhibit 12 at ¶ 7.

43. *See* Plaintiff's Exhibit 12 at ¶ 9.

44. *See* Plaintiff's Exhibits 28 and 31.

45. Dr. Imperial claims that defendants are not entitled to immunity because there was a failure to comply with the provisions of § 11133(c)(1) concerning the reporting of peer review actions. There is no need for the Court to resolve this factual dispute because 42 U.S.C. § 11133(c) provides that the loss of immunity occurs only if "the Secretary [of Health] publishes the name of the entity under section 11111(b) of this title." The short answer to Dr. Imperial's argument is there never was a publication of the name of Suburban Hospital for a failure to report, and, accordingly, there is no basis for the plaintiff's claim.

dants are entitled to immunity under state law with respect to these claims.

The Court will evaluate the defendants' actions under both the Maryland common law and Section 14–501(f) of the Health Occupations Article of the Annotated Code of Maryland (which is a state counterpart to the HCQIA). The defendants' actions, with respect to Dr. Imperial, began in 1987 but Section 14–501(f) was not enacted until 1989. Because no court has yet addressed the retroactivity of this Article, the Court will apply both the common law and Section 14–501(f) alternatively.

 First, under Maryland common law, "a private hospital has the right to exclude any physician from practicing therein, such exclusion rests within the sound discretion of the managing authorities." *Levin v. Sinai Hosp., Inc.*, 186 Md. 174, 46 A.2d 298, 301 (1946). Since the Court has already concluded in the aforementioned section that defendants' actions were warranted by the facts available to them, the Court concludes that the defendants acted with sound discre-

tion and thus deserve immunity under the common law test.

Second, under Section 14–501(f) of the Health Occupations Article of the Annotated Code of Maryland, "[a] person shall have the immunity from liability described under § 5–393 of the Courts and Judicial Proceedings Article for any action as a member of the medical review committee or for giving information to, participating in, or contributing to the function of the medical review committee."

Section 5–393 of the Courts and Judicial Proceedings Article states that "[a] person who acts in good faith and within the scope of the jurisdiction of a medical review committee is not civilly liable for any action as a member of the medical review committee or for giving information to, participating in, or contributing to the function of the medical review committee." [46]

 The Court has already concluded, in the previous section analyzing the HCQIA, that the defendants acted with good faith and within the scope of their jurisdiction when

**46.** The hearing panel, Credentials Committee, and Medical Staff Executive Committee of Suburban Hospital all meet the definition of a "medical review committee" set forth in Health Occupations Article § 14–501(b)(5) of the Maryland Annotated Code. A medical review committee is defined as:

> A committee of the medical staff or other committee, including any risk management, credentialing, or utilization review committee established in accordance with § 19–319 of the Health–General Article, of a hospital, related institution, or alternative health care system, if the governing board of the hospital, related institution, or alternative health care system forms and approves the committee or approves the written bylaws under which the committee operates.

Furthermore, the hearing panel, Credentials Committee, and Medical Staff Executive Committee all perform the functions of the medical review committee as defined as Section 14–501(c) of the Health Occupations Article as follows:

(1) Evaluates and seeks to improve the quality of health care provided by providers of health care;

(2) Evaluates the need for and the level of performance of health care provided by providers of health care;

(3) Evaluates the qualifications, competence, and performance of providers of health care; or

(4) Evaluates and acts on matters that related to the discipline of any provider of health care.

The complaint states that all the individual defendants in this case, with the exception of Dr. John Saia, participated in the review of Dr. Imperial in their capacity as members of the hearing panel, Credentials Committee, and Medical Staff Executive Committee. As such, they are entitled to the immunity provided under Section 14–501 of the Health Occupations Article.

Dr. John Saia, although not a member of any of the committees, participated in the review of Dr. Imperial by providing information to the hospital and contributing to the function of the medical review committees by serving as a witness. Dr. Saia is entitled to immunity provided under Section 14–504 of the Health Occupations Article, which provides that

> [a] person described in subsection (b) of this section shall have immunity from liability described in § 5–394 of the Courts and Judicial Proceedings Article for giving information to any hospital, hospital medical staff, related institution, or other health care facility, alternative health system, professional society, medical school, or professional licensing board.

Md.Health Occ.Code Ann. § 14–504(c) (1991). Included in the list of individuals entitled to the immunity is "a physician." *Id.* § 14–504(b)(15).

they denied Dr. Imperial privileges. Thus, if Section 14–501(f) applies retroactively, the defendants qualify for immunity under Maryland law. The plaintiff has provided no evidence suggesting the contrary.

III. *CONCLUSION*

The Court concludes that the defendants' peer review actions satisfied the HCQIA requirements. The actions, therefore, are immune from federal antitrust liability under 42 U.S.C. § 11111(a)(1). This immunity extends to all eight defendants under Section 11111(a)(1)(A)–(D).

The Court also concludes that all eight defendants meet the requirements for immunity under Maryland common law and Section 14–501(f) of the Maryland Health Occupations Article. The defendants are therefore immune from the state law claims of (i) breach of contract and violation of the Medical Staff by-laws and (ii) tortious interference with contracts and business relations.

Accordingly, the Court will GRANT the defendants' Motion for Summary Judgment as to Counts II, III, and IV of the complaint.